IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Michael Theodore Quinlan, | ) | C/A No. 0:13-1502-JFA-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Carrington Mortgage Services, LLC; | ) | |
| Wilmington Savings Fund Society FSB, *on* | ) | |
| *behalf of Christiana Trust Stanwich Series* | ) | |
| *Mortgage Loan Trust Series 2012-12*; John | ) | |
| Doe, *Inclusive*, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

The plaintiff, Michael Theodore Quinlan ("Quinlan"), a self represented litigant, filed this action purportedly pursuant to the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 et seq.; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq.; the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq.; the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. §§ 6801 et seq.; and 18 U.S.C. § 1341 against the named defendants.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the motion to dismiss filed by Defendants Carrington Mortgage Services, LLC ("CMS") and Wilmington Savings Fund Society FSB ("WSFS"). (ECF No. 27.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Quinlan of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately

---

[1] It appears that Defendant John Doe was never identified or served with process. Accordingly, the court recommends that this defendant be dismissed from this action without prejudice. See Fed. R. Civ. P. 4(m).



to the defendants' motion.  (ECF No. 28.)  Quinlan filed a response in opposition (ECF No. 38), and

the defendants replied (ECF No. 39).[2]  Having reviewed the parties' submissions and the applicable

law, the court finds that the defendants' motion to dismiss should be granted.

## BACKGROUND

Quinlan alleges that he "signed a Mortgage and Promissory Note with Homegold, Inc.," on

February 9, 2000.  (ECF No. 1 at 3.)  Quinlan states that the "principle amount of the original Note

was $67,500," and that the note and mortgage were sold and assigned to Key Bank via an assignment

of mortgage filed on May 15, 2002.  (Id.)  A second assignment of mortgage was allegedly filed on

February 23, 2004, assigning the mortgage to Citifinancial Mortgage Company.  (Id. at 4.)  Quinlan

claims that he made payments on the note to either Key Bank or CitiFinancial Mortgage Company

between March of 2000 and September of 2013.[3]  (Id.)  Quinlan alleges that, on October 25, 2012,

he received notices from Defendant CMS indicating that it would begin servicing the loan, which

had again been sold on September 27, 2012.  (Id.)  Quinlan states that the new creditor was identified

as Defendant WSFS.  (Id.)  Quinlan alleges that the defendants have violated unspecified provisions

of the following federal statutes:  RESPA, TILA, FDCPA, GLBA.  (Id. at 10-11.)  Quinlan further

claims that the defendants have committed or conspired to commit mail fraud in connection with

---

[2] Quinlan also filed a sur-reply.  (ECF No. 40.)  The Local Rules make no provision for sur-replies.  Further, under Local Civil Rule 7.07 DSC, "[r]eplies to responses are discouraged."  In this instance Quinlan's sur-reply addressed the defendants' request to strike Quinlan's response in opposition to the motion to dismiss for allegedly being filed one day late.  (ECF No. 39.)  Because the court's consideration of Quinlan's response in opposition to the motion to dismiss (ECF No. 38) does not change the court's analysis of the legal issues or its recommendation to grant the defendants' motion to dismiss, the court denies the defendants' request to strike Quinlan's response as moot in light of this Report and Recommendation.

[3] It appears that Quinlan may have intended to allege that he made payments until September of 2012.



Quinlan's note and mortgage. (Id. at 11-12.) Quinlan seeks injunctive relief, a declaratory judgment, and monetary damages. (Id. at 12-13.)

## DISCUSSION

### A.     Motion to Dismiss Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). A court may consider "documents attached or incorporated into the complaint" without converting a motion to dismiss into a motion for summary judgment. E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Further, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396-97 (4th Cir. 2006) (citing Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (permitting consideration of extraneous material if such materials are "integral to and explicitly relied on in the complaint");



Gasner v. Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995) (permitting district court to take judicial notice of public documents, such as court records, even when the documents are neither referenced by nor integral to plaintiff's complaint)).

In applying this standard, the court observes that it is required to liberally construe *pro se* complaints. Erickson, 551 U.S. at 94. Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, id.; Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's factual allegations are assumed to be true. Erickson, 551 U.S. at 93. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

**B.      RESPA Claims**

"RESPA prescribes certain actions to be followed by entities or persons responsible for servicing federally related mortgage loans, including responding to borrower inquiries." Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc., 858 F. Supp. 2d 561, 573 (E.D.N.C. 2012) (citing 12 U.S.C. § 2605). The defendants assert that Quinlan's claims under RESPA are insufficiently alleged and that any identifiable claims under that statute should be dismissed as a matter of law. (ECF No.



27-1 at 5.)  In his response in opposition to the defendants' motion to dismiss this case, Quinlan cites to RESPA and generally alleges that his claims are sufficiently stated.  (ECF No. 39 at 1-2.)  Quinlan provides no additional factual support for his RESPA claims, nor does he address the defendants' specific arguments for dismissal of such claims.  As discussed below, the court finds that the defendants' motion to dismiss should be granted in relation to Quinlan's RESPA claims.

### 1.     Required disclosures

RESPA requires a lender to make certain disclosures at the time the mortgage is originated. 12 U.S.C. § 2605(a).  The defendants assert that they cannot be held liable for any violation under § 2605(a), because they are not the mortgage loan originators.  (ECF No. 27-1 at 6.)  The Complaint alleges that Quinlan originally signed a mortgage with Homegold, Inc., on February 9, 2000, and provides no facts to demonstrate that the defendants are the originators of the mortgage.  (ECF No. 1 at 3.)  Therefore, the court agrees that any claims raised by Quinlan under § 2605(a) are subject to dismissal.  See Burkhead v. Wachovia Home Mortg., C/A No. 3:12-832-JAG, 2013 WL 2156472, at *4 (E.D. Va. May 17, 2013) (holding that a "passing reference to § 2605(a) achieves nothing" where the plaintiff does not allege that the defendant failed to disclose applicable information " 'at the time of application for the loan' ") (quoting 12 U.S.C. § 2605(a)).

### 2.     Notice transfer requirements

RESPA further requires the service transferee of a mortgage loan to provide written notice of the transfer within fifteen days.  12 U.S.C. § 2605(c).  The defendants allege that Quinlan's RESPA claims associated with the transfer of his mortgage loan should be dismissed because the Complaint admits that Defendant CMS provided the required notice within the specified time period and Quinlan's Exhibit "D" to the Complaint illustrates that such notice comports with the



requirements of 12 U.S.C. § 2605(c)(3). (ECF No. 27-1 at 6.) The Complaint alleges that Defendant CMS became the transferee of Quinlan's mortgage loan on or about October 30, 2012. (ECF No. 1 at 4.) The Complaint further alleges that Defendant CMS sent Quinlan a "Notice of Transfer of Service" and "Notice of Sale of Ownership Mortgage Loan" on October 25, 2012. (Id. at 4; ECF No. 1-2.) Quinlan asserts that he received a second "Notice of Transfer of Service" from Defendant CMS on or about November 15, 2012. (ECF No. 1 at 5.) A review of the notice of transfer letter from Defendant CMS, dated November 9, 2012, reveals that it contains the information required by § 2605(c)(3). (ECF No. 1-5.) As the Complaint and Quinlan's Exhibit "D" demonstrate that Defendant CMS provided a timely notice of the transfer, which complied with the requirements of § 2605(c), the court finds Quinlan's allegations of a violation under this subsection are deficient. See Woody v. Bank of Am. Corp., C/A No. 5:09-CV-398-D, 2010 WL 2332732, at *3 (E.D.N.C. June 9, 2010) (dismissing as implausible a RESPA claim under § 2605(c), where the plaintiff did not demonstrate that the defendants failed to give notice of a transfer).

### 3. Imposition of late fees

Section 2605(d) prohibits the imposition of late fees on an account during the sixty-day transition period of servicing, if the borrower makes a timely payment to the transferor servicer, rather than to the transferee. See 12 U.S.C. § 2605(d). The defendants assert that any claims raised by Quinlan under § 2605(d) should be dismissed because this subsection of the statute is irrelevant as applied to Defendant CMS. (ECF No. 27-1 at 7.) The court agrees. The Complaint alleges that Quinlan made payments on the note to "either Key Bank or Citi" prior to the transfer, but provides no facts to indicate that he made a payment to Defendant CMS or any other servicer within the sixty-day transition period. (ECF No. 1 at 4.) Thus, Quinlan provides no factual allegations to

demonstrate a violation of § 2605(d) and any claims raised under that subsection should be dismissed.

### 4.    Qualified written requests

RESPA also requires a servicer to acknowledge a borrower's qualified written request ("QWR") for information relating to the servicing of a loan within five business days of receipt, and to provide a written response to the QWR within thirty days. 12 U.S.C. § 2605(e)(1)(A), (e)(2). "In order to state a claim for a violation of RESPA's QWR provisions, the borrower must demonstrate (1) a written request that meets RESPA's definition of a QWR, (2) the servicer failed to perform its duties, and (3) actual damages." IAR Family Trust v. Suntrust Mortg., Inc., C/A No. 3:13-CV-418-GCM, 2014 WL 1432378, at *3 (W.D.N.C. Apr. 14, 2014). Courts in this circuit have held that a letter challenging the validity of a debt does not constitute a QWR. See Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc., 858 F. Supp. 2d 561, 574 (E.D.N.C. 2012); see also Reed v. PNC Mortg., C/A No. AW-13-1536, 2013 WL 3364372, at *4 (D. Md. July 2, 2013) (finding "no plausible claim for relief pursuant to RESPA" where the plaintiff's purported QWR to the defendant "contested the validity of the loan and requested various documents and information relating to the origination and transfer of the note and deed of trust"). The defendants argue for dismissal of Quinlan's claims related to his purported QWR because the letters seek information about the validity of the loan rather than information regarding Defendant CMS's servicing of the loan. (ECF No. 27-1 at 8.)

The Complaint alleges that Quinlan sent Defendant CMS a QWR on November 6, 2012, addressed to its company headquarters. (ECF No. 1 at 4-5.) However, Quinlan indicates that he received a letter from Defendant CMS on November 15, 2012, which directs questions regarding the



servicing of Quinlan's account to the defendant's Customer Service Department in Irvine, California.[4]  (ECF No. 1 at 5; ECF No. 1-5 at 3.)  Quinlan states that he then resubmitted a copy of the QWR to this defendant's Customer Service Department on November 20, 2012, which they received on December 3, 2012.  (ECF No. 1 at 5-6; ECF No. 1-6.)  Quinlan's QWR, which he attached to the Complaint as an exhibit, discusses "disputes with CitiMorgage on handling of the account" and requests information regarding the validity of the debt.  (ECF No. 1-3 at 2-3.)  As Quinlan's letter does not relate to Defendant CMS's servicing of the loan, the court agrees that it does not constitute a QWR.  However, even if the court were to construe the letter as a QWR, the Complaint reflects that Defendant CMS timely acknowledged and responded to Quinlan's properly addressed correspondence as required by § 2605(e).  (ECF No. 1 at 6; ECF Nos. 1-7, 1-8.)  Therefore, Quinlan's allegations relating to his purported QWR's should be dismissed.

**5.      RESPA servicer prohibitions**

RESPA prohibits certain actions by loan servicers to include the forced placement of hazard insurance "unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance."  12 U.S.C. § 2605(k)(1)(A).  The defendants assert that any RESPA claims related to the forced placement of hazard insurance should be dismissed because Quinlan fails to allege or demonstrate that Defendant CMS unreasonably placed flood insurance on the property.  (ECF No. 27-1 at 12.)  The Complaint alleges that Quinlan received letters from Defendant CMS in December of 2012 indicating that his flood insurance coverage had lapsed and "$239.00 had been applied to the account for the lapsed coverage."  (ECF

---

[4]  The notice received by Quinlan on October 25, 2012, from Defendant CMS also provides the correct address for questions regarding the loan.  (ECF No. 1-2 at 2.)



No. 1 at 6-7; ECF Nos. 1-9, 1-11.)  On January 5, 2013, the Complaint alleges that Quinlan received an additional letter from Defendant CMS indicating that Quinlan's flood insurance policy had expired and allowing him thirty days to verify coverage.  (ECF No. 1 at 7; ECF No. 1-12 at 2.)  A review of the Complaint reveals no allegation by the Quinlan that he renewed his flood insurance or that he notified the defendants of any such insurance policy renewal in response to the letters.  As Quinlan's Complaint does not allege facts showing that Defendant CMS's forced placement of flood insurance on his property was unreasonable, the court finds that he fails to show a violation of § 2605(k)(1)(A).

### 6.    Failure to allege damages

" '[A]lleging a breach of RESPA duties alone does not state a claim under RESPA.  Plaintiff must, at a minimum, also allege that the breach resulted in actual damages.' "  Champion v. Bank of Am., N.A., C/A No. 5:13-CV-272-BR, 2014 WL 25582, at *3 (E.D.N.C. Jan. 2, 2014) (citation omitted); see also Ward, 858 F. Supp. 2d at 575 (collecting cases).  The defendants argue that Quinlan's RESPA claims are further subject to dismissal because he fails to allege any pecuniary loss attributable to the defendants' purported RESPA violations.  (ECF No. 27-1 at 13.)  The Complaint, which seeks monetary damages, reveals no facts to allege actual damages resulting from the defendants' actions.  Therefore, the court agrees that Quinlan's  RESPA claims are deficient  and that the defendants' motion to dismiss Quinlan's claims under that statute should be granted.

### 7.    Failure to state a claim for any other RESPA violations

The defendants further assert that Quinlan's RESPA claims should be dismissed because they are insufficient to put the defendants "on notice of the transactions, occurrences, or events which would amount to a RESPA violation" pursuant to Rule 8 of the Federal Rules of Civil Procedure.



(ECF No. 27-1 at 5.)  Quinlan responds to this assertion by generally alleging that his claims are sufficiently stated.  (ECF No. 38 at 2.)  The Complaint claims that Defendant CMS violated nine requirements of RESPA, but provides no reference to any particular subsection of the statute to support these allegations.  (ECF No. 1 at 10.)  Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although the court must liberally construe a *pro se* complaint, the United States Supreme Court has made clear that a plaintiff must do more than make conclusory statements to state a claim.  See Iqbal, 556 U.S. at 677-78; Twombly, 550 U.S. at 555.  Further, the reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 556 U.S. at 678-79.  In this case, the court has addressed the RESPA claims which could be liberally construed from the Complaint's factual allegations.  The court agrees that any additional claims Quinlan may be attempting to assert under RESPA should be dismissed as too conclusory and insufficient to state a claim under that statute.

## C.     FDCPA Claims

"Congress enacted the FDCPA with the goal of eliminating abusive, deceptive, and unfair debt collection practices."  Clark v. Absolute Collection Serv., Inc., 741 F.3d 487, 490 (4th Cir. 2014) (citing 15 U.S.C. § 1692).  "To establish an FDCPA claim, a plaintiff must prove that:  '(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.' "  Boosahda v. Providence Dane LLC, C/A No. 10-1933, 2012 WL 268345, at *1 n.3 (4th Cir. Jan. 31, 2012) (quoting Ruggia v. Wash. Mut., 719 F. Supp. 2d 642, 647 (E.D. Va. 2010)).  The defendants allege that Quinlan fails to sufficiently allege any claim against



them under the FDCPA. (ECF No. 27-1 at 14.) Quinlan's response in opposition to the defendants'
motion to dismiss cites to the FDCPA and generally alleges that he has provided sufficient factual
information to provide "notice of the claim and the grounds on which it stands." (ECF No. 38 at 1-
2.) For the reasons that follow, the court recommends that the defendants' motion to dismiss be
granted in relation to Quinlan's FDCPA allegations.

### 1.      Demand for validation

The FDCPA states that: "Within five days after the initial communication with a consumer
in connection with the collection of any debt, a debt collector shall, unless the following information
is contained in the initial communication or the consumer has paid the debt, send the consumer a
written notice containing" information to include the amount of debt and the name of the creditor
to whom the debt is owed. 15 U.S.C. § 1692g(a). The defendants assert that any claims raised by
Quinlan under this subsection should be dismissed, because Quinlan's exhibits demonstrate that
Defendant CMS fully complied with the FDCPA's requirements under § 1692g(a). (ECF No. 27-1
at 15.)

The Complaint alleges that Quinlan sent Defendant CMS a "Notice of Dispute, Demand for
Validation and Proof of Claim" on November 6, 2012; however, this defendant purportedly failed
to acknowledge receipt of the debt validation letter. (ECF No. 1 at 5.) The Complaint and exhibits
reflect that Quinlan purportedly received a notice from Defendant CMS on October 25, 2012,
regarding the sale of ownership of the mortgage loan. (ECF No. 1 at 4.) This notice, which Quinlan
attached as an exhibit the Complaint, provides the amount of the debt and the name of the creditor
to whom the debt it owed. (ECF No. 1-2.) As with the QWR discussed above, Quinlan indicates
that he originally sent his validation request letter to Defendant CMS's headquarters and resubmitted



the letter to the defendant's Customer Service Department on November 20, 2012, after being advised by Defendant CMS of the correct address for questions regarding the servicing of the account. (ECF No. 1 at 5-6; ECF No. 1-5 at 3.) Quinlan provides a return receipt for the validation request dated December 3, 2012, and alleges that he received a packet of information in response to his properly addressed debt validation letter on December 7, 2012. (ECF No. 1 at 6; ECF No. 1-7.) This packet of information, which Quinlan references in the Complaint and attaches to the pleading as an exhibit, includes all of the information required by § 1692g(a). (ECF No. 1 at 6; ECF No. 1-7.) As the Complaint and exhibits reflect that Defendant CMS provided Quinlan the information required by § 1692g(a) of the FDCPA, the court agrees that this claim should be dismissed.

### 2. Unauthorized communication regarding the debt

Under § 1692g(b), if a consumer notifies the debt collector that the debt is disputed, the debt collector must " 'cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . and a copy of the verification . . . is mailed to the consumer by the debt collector.' " Clark, 741 F.3d at 490 (quoting 15 U.S.C. § 1692g(b)). The United States Court of Appeals for the Fourth Circuit has determined that verification of a debt "involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed," and is intended to " 'eliminate the . . . problem of debt collectors dunning the wrong person or attempting to collect debts with the consumer has already paid.' " Chaudhry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999) (citation omitted). The defendants assert that any claim raised by Quinlan alleging an improper communication by Defendant CMS subsequent to Quinlan's loan validation letter should be dismissed as Quinlan's exhibits illustrate

Page 12 of 19



that such "communications were not made for the purpose of collecting a debt." (ECF No. 27-1 at 16.)

As stated previously, the Complaint alleges that Quinlan initially sent a validation request letter to Defendant CMS's headquarters on November 6, 2012, and resent the letter to CMS's Customer Service Department on November 20, 2012. (ECF No. 1 at 5-6.) On December 7, 2012, Quinlan allegedly received a packet of information from attorneys for CMS confirming the amount of the debt, identifying the original creditor, identifying the current owner of the debt, and providing documents to verify and evidence the debt. (ECF No. 1 at 6; ECF Nos. 1-7, 1-8.) Between Quinlan's dispute of the debt and Defendant CMS's mailed response verifying the debt, Quinlan alleges he received a second "Notice of Transfer of Service" from Defendant CMS on November 15, 2012. (ECF No. 1 at 5.) This communication notified Quinlan that his mortgage loan had been transferred to Defendant CMS for servicing and provided the correct address for future payments. (ECF No. 1-5.) As this letter makes no attempt to collect the debt, the court finds that such communication does not violate § 1692g(b) and that the defendants' motion to dismiss this claim should be granted.

### 3.    Failure to state a claim regarding any other FDCPA violations

The defendants argue that Quinlan's FDCPA claims should be dismissed because the Complaint "fails to delineate or provide notice to Carrington of the specific FDCPA provision" allegedly violated. (ECF No. 27-1 at 14.) The defendants further allege that Quinlan fails to plead that Defendant CMS attempted to collect a debt at any unusual time or place, committed harassment or abuse, provided false and misleading representations, or committed unfair means to collect the debt in violation of the FDCPA. (Id. at 15.) Quinlan's response in opposition to the motion to



dismiss cites to the statute and generally alleges that he provided sufficient information to state a claim under the FDCPA.  (ECF No. 38.)

The Complaint alleges that Defendant CMS "violated three requirements of FDCPA." (ECF No. 1 at 10.)  The court agrees that Quinlan's claims under the FDCPA are not delineated, and that any such claims which have not been liberally construed from the facts of the Complaint are subject to dismissal.  See Iqbal, 556 U.S. at 677-78; Twombly, 550 U.S. at 555.  The court observes that Quinlan could be alleging an additional FDCPA claim under 15 U.S.C. § 1692e(8) for Defendant CMS's alleged failure to advise credit reporting agencies that Quinlan's account was disputed.  (ECF No. 1 at 7-8.)  However, district courts have held that, under the FDCPA, " 'debt collectors do not include creditors, mortgagors, mortgage servicing companies, trustees exercising their fiduciary duties, or assignees of debt so long as the debt was not in default at the time it was assigned.' " Patrick v. PHH Mortg. Corp, 937 F. Supp. 2d 773, 789-90 (N.D.W. Va. 2013) (citation omitted); see also Stoudemire v. Ray, C/A No. 3:09-2485-CMC-JRM, 2012 WL 762037, at *3 (D.S.C. Feb. 9, 2012) ("creditors, mortgagors, and mortgage servicing companies are not debt collectors under the FDCPA and are therefore exempt from liability under the FDCPA"), adopted by 2012 WL 762021 (D.S.C. Mar. 8, 2012).

In this case, Quinlan alleges FDCPA claims against a mortgage servicing company, Defendant CMS, and provides no facts to indicate that his debt was in default at the time Defendant CMS began servicing the loan.  Instead, Quinlan asserts that he "made payments on the Note to either Key Bank or Citi" between March of 2000 and September of 2012.  (ECF No. 1 at 4.)  The Complaint reflects that Quinlan's loan was sold on September 27, 2012, and transferred to Defendant CMS for servicing in October of 2012.  (Id.)  As Defendant CMS does not meet the definition of



debt collector under the FDCPA, Quinlan's claims under that statute are subject to dismissal. Therefore, the defendants' motion to dismiss Quinlan's claims under the FDCPA should be granted.

## D.     TILA Claims

 "TILA requires that a creditor make certain material disclosures at the time the loan is made," Gilbert v. Residential Funding LLC, 678 F.3d 271, 276 (4th Cir. 2012), and its purpose is " 'to assure a meaningful disclosure of credit terms so that the consumers will be able to compare more readily the various credit terms available . . . and avoid the uninformed use of credit. . . . .' " Jolly v. Wells Fargo Bank, N.A., C/A No. 6:12-3110-MGL, 2013 WL 3270459, at *3 (D.S.C. June 26, 2013) (quoting 15 U.S.C. § 1601(a)).  "Claims seeking civil damages under TILA are governed by a one year statute of limitations, and must be brought within one year of the date of the occurrence of the violation." Id. (citing 15 U.S.C. § 1640(e)).  Where the violation is one of an alleged failure to disclose information, " 'the date of the violation is no later than the date the plaintiff enters the loan agreement.' " Abdel-Malak v. JP Morgan Chase Bank, N.A., 748 F. Supp. 2d 505, 510 (D. Md. Oct. 20, 2010) (citation omitted).  The defendants allege that any claims raised by Quinlan under TILA should be dismissed because Defendants CMS and WSFS did not originate the loan, Quinlan failed to properly plead assignee liability, and because Quinlan's TILA claims are time barred.  (ECF No. 27-1 at 17.)

The Complaint alleges that Defendant CMS's actions "demonstrate a clear pattern or practice of noncompliance with the requirements of TILA," and that Defendant WSFS violated TILA.  (ECF No. 1 at 10.)  However, Quinlan's naked assertions, without any supporting factual allegations, are insufficient to demonstrate that any "TILA mandated disclosures were not made."  Ward, 858 F. Supp. 2d at 569 (citing Hudson v. Bank of Am., N.A., C/A No. 3:09-CV-462, 2010 WL 2365588,



at *5 (E.D. Va. June 11, 2010) (dismissing TILA claim where plaintiff only restated the essential elements of a claim under TILA and failed to present any supporting factual allegations)). Further, the Complaint alleges that Quinlan signed a mortgage and promissory note with Homegold, Inc., on February 9, 2000. (ECF No. 1 at 3.) Thus, Quinlan fails to demonstrate that the defendants originated the loan, and his claims under TILA are barred by the one-year statute of limitations in any event. See Pressley v. Tupperware Long Term Disability Plan, 553 F.3d 334, 336 (4th Cir. 2009) (" '[W]here facts sufficient to rule on an affirmative defense [such as the defense that the plaintiff's claim is time-barred] are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6).' ") (quoting Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007)). As such, the defendants' motion to dismiss Quinlan's TILA claims should be granted.

## E.     GLBA Claims

The defendants assert that Quinlan's claims under the GLBA should be dismissed because the Complaint cites a section of the Act which does not exist and fails to state a recognizable claim under federal law. (ECF No. 27-1 at 20.) The Complaint's sole allegation regarding the GLBA is that Defendant WSFS "violated 15 U.S.C. Sec. 680." (ECF No. 1 at 11.) Quinlan's response in opposition to dismiss his GLBA claim provides a correct cite to that statute, 15 U.S.C. § 6801, and acknowledges a typographical error in the Complaint's reference to the Act. (ECF No. 38 at 1.) However, the response asserts only that Quinlan provides "specific names and dates of actions or inactions" of the defendants to support the claim. (Id. at 2.) The court agrees that the Complaint's conclusory allegation of a GLBA violation is insufficient to withstand the defendants' motion to dismiss Quinlan's claims under the Act. See Iqbal, 556 U.S. at 677-78; Twombly, 550 U.S. at 555. Further, the court observes that " '[n]o private right of action exists for an alleged violation of the

Page 16 of  19



GLBA.' " <u>Quasem v. Guidance Residential, LLC</u>, C/A No. PJM 11-1836, 2012 WL 909297, at *3 (D. Md. Mar. 14, 2012) (quoting <u>Dunmire v. Morgan Stanley DW, Inc.</u>, 475 F.3d 956, 960 (8th Cir. 2007). Therefore, the court finds that the defendants' motion to dismiss Quinlan's GLBA claims should be granted.

**F.    Mail Fraud Claims**

Finally, 18 U.S.C. § 1341 is a criminal statute which "prohibits using the mails for the purpose of executing 'any scheme or artifice to defraud.' " <u>United States v. Geddings</u>, No. 07-4544, 2008 WL 2095385, at *4 (4th Cir. May 19, 2008) (citation omitted). The defendants assert that Quinlan's claims relating to attempted mail fraud and conspiracy to commit mail fraud should be dismissed because mail fraud is "typically a criminal action brought by the government," and Quinlan fails to allege the required elements for such a claim. (ECF No. 27-1 at 20-21.) Quinlan's response in opposition to the motion to dismiss does not specifically respond to the defendants' assertions. (ECF No. 38.) Instead, Quinlan cites to the mail fraud statute and makes a general allegation that his claims are sufficiently stated. (<u>Id.</u> at 1-2.)

The Complaint alleges that Defendant CMS demanded monies from Quinlan, "attempting to commit fraud and enforce the note and deed thru the US Postal Service violating Title 18 U.S.C. Chapter 63 Sec. 1341." (ECF No. 1 at 12.) Quinlan further alleges that Defendant WSFS "intentionally and thru agreement colluded and conspired with Carrington to commit fraud thru the US Postal Service violating Title 18 U.S.C. Chapter 63 Sec. 1341." (<u>Id.</u>) However, § 1341 does not create a private cause of action for mail fraud. <u>See</u> <u>Uhre v. Emmett A. Larkin Co., Inc.</u>, 205 F. Supp. 2d. 475, 478 (D. Md. 2002); <u>see also</u> <u>Thomas v. Equitable Life Mortg. and Realty Investors</u>, C/A No.

3:13-130-CMC-PJG, 2013 WL 2352589, at *7 (D.S.C. May 29, 2013).  Therefore, the court finds

that the defendants' motion to dismiss Quinlan's mail fraud claims should be granted.[5]

### RECOMMENDATION

For the foregoing reasons, the court recommends that the defendants' motion to dismiss (ECF

No. 27) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 16, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[5]  As asserted by defendants in the motion to dismiss, Quinlan fails to allege any violation under the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c), in the Complaint.  (ECF No. 27-1 at 21.)  Therefore,  reviewing Quinlan's Complaint liberally, and in the light most favorable to him, the court finds the Complaint to be devoid of any language or facts that could be construed to allege a civil RICO violation.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).